MARK D. FLANAGAN, State Bar No. 130303
LISA A. DAVIS, State Bar No. 179854
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiff
Towantic Energy, L.L.C.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TOWANTIC ENERGY, L.L.C., a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>GENERAL ELECTRIC COMPANY, a New York corporation,<br><br>        Defendant. | CASE NO.:  C04-00446 JF<br><br>SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, RESTITUTION AND UNFAIR TRADE PRACTICE<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Towantic Energy, L.L.C. ("Towantic") alleges as follows for its Second Amended Complaint:

**JURISDICTION AND VENUE**

1.       Towantic is a limited liability company formed under the laws of the State of Delaware, having its principal place of business in Boston, Massachusetts.  Defendant General Electric Company ("GE") is a corporation incorporated under the laws of the State of New York, having its principal place of business in New York.  The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.  This Court therefore has jurisdiction over this action under 28 U.S.C. § 1332.

2. GE engages in pervasive business activity, including marketing of services, delivery of goods and performance of services, in California. In addition, GE and Towantic have stipulated to suit in the United States District Court for the Northern District of California, San Jose Division. Venue in the United States District Court for the Northern District of California is therefore proper, as is assignment to the San Jose Division under Civil Local Rule 3-2(c).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

3. Towantic is the owner of a planned combined cycle electrical generation facility known as the Towantic Energy Center Project (the "Energy Center Project"), to be developed in Oxford, Connecticut.

4. GE is, among other things, a manufacturer and seller of gas and steam turbine generator equipment. GE has engaged in the manufacture and sale of steam turbines for more than a century and has sold more than 6,000 heavy-duty gas turbines. The gas and steam generators at issue here are commodity goods, which can be and are purchased for use on projects other than those for which they may have been originally ordered or intended.

5. On or about November 13, 2000, Towantic entered into a written contract ("Purchase Contract") with GE for the purchase of two gas turbine generators and one steam turbine generator (collectively, the "Turbine Generators") for the Energy Center Project, at the price of $84,351,016. The Purchase Contract provided that it is governed by New York law and that any disputes regarding it would be heard in the United States District Court for the Northern District of California, San Jose Division. A copy of the Purchase Contract dated November 13, 2000 is attached hereto as Exhibit A.

6. The Purchase Contract incorporated a payment schedule, entitled "Payment and Termination Schedule," under which payments were to be made consistent with the anticipated manufacturing of the Turbine Generators. GE was not willing to alter the timing of payments under the schedule, and because GE has and, at the time the Purchase Contract was being negotiated, had market power in the market for heavy-duty gas and steam turbines, Towantic effectively had no recourse but to agree to these terms if it wanted to complete the Energy Center Project. The manufacturing schedule for the Turbine Generators, in turn, was arrived at based on

the parties' estimate of when the Energy Center Project would be ready for installation of the Turbine Generators, taking into account necessary project development and the issuance of necessary government permits and approvals.  Accordingly, the Purchase Contract set forth a schedule for the Turbine Generators to be delivered in March 2002.

7. Towantic made a series of payments under the schedule, eventually paying a total of $24,705,936 to GE.  Beginning in late 2000, however, Towantic repeatedly notified GE of significant delays to the Energy Center Project, primarily caused by delays in receiving government permits required to build and operate the Energy Center Project.  Based on these delays, Towantic requested that GE postpone manufacturing of the Turbine Generators.  GE and Towantic entered into a series of change orders to the Purchase Contract designed to postpone manufacturing of the Turbine Generators until it was reasonably certain that the Energy Center Project would be able to proceed with all necessary approvals.  These change orders also restructured Towantic's payment schedule to align the remaining payments to be made with each new delivery schedule.  On June 28, 2001, a change order was issued that altered the delivery date for the Turbine Generators from March 2002 until March/April 2003.  A copy of the June 28, 2001 Change Order is attached hereto as Exhibit B.  Because of continuing delays, on February 25, 2002, the parties agreed to another change order, which changed the delivery date for the Turbine Generators to March/April 2004.  A copy of the February 25, 2002 Change Order is attached hereto as Exhibit C.  Thereafter, based on continuing delays, on January 28, 2003, the parties agreed to yet another change order, which altered the delivery date for the Turbine Generators to October 2004.   A copy of the January 28, 2003 Change Order is attached hereto as Exhibit D.

8. The continuing delays in issuance of governmental approvals for the Energy Center Project rendered uncertain Towantic's ability to complete the Energy Center Project within a commercially reasonable period of time.  In or about September and October 2003, Towantic requested a change order from GE to further postpone delivery of the Turbine Generators and adjust the payment schedule accordingly.  On or about October 22, 2003, GE denied the extension.  Accordingly, on October 22, 2003, Towantic notified GE that it was

canceling the Purchase Contract, and requested the return of the payments Towantic had made under the Payment Schedule.  A copy of Towantic's letter to GE dated October 22, 2003 is attached as Exhibit E.  GE has refused to return Towantic's payments, claiming that Towantic is entitled to a refund of only $862,049 of the $24,705,936 that it has paid toward the purchase of the Turbine Generators.  A copy of GE's letter to Towantic dated October 27, 2003 is attached hereto as Exhibit F.  In an effort to deter Towantic from further pursuing its refund claim, GE claimed that it had "reviewed the matter with both internal and external counsels, who have assured us that the termination payment obligation is valid and enforceable under New York law." *Id*.  GE has never claimed that it expended any actual costs toward manufacture of the turbines called for under the Purchase Contract.

9. Towantic is informed and believes that as of the date of Towantic's notification, GE had not expended any meaningful resources in manufacturing or assembly of any of the Turbine Generators that GE would have delivered under the Purchase Contract as of the date of Towantic's cancellation of the Purchase Contract.  Towantic is also informed and believes that to the extent GE did expend resources on Turbine Generators destined for delivery to Towantic, GE was able to and did sell those Turbine Generators to other buyers or for use on projects other than the Energy Center Project.  The "termination fee" was therefore not reasonable in light of the actual harm to GE, if any, caused by Towantic's termination of the Purchase Contract.

10. Towantic is informed and believes that GE's extensive historical experience with the manufacture and sale of steam and gas turbines permits GE to calculate with reasonable certainty the loss, if any, it suffered when Towantic cancelled the Purchase Contract.  Towantic is further informed and believes that GE was aware at the time it entered into the Purchase Contract with Towantic that any loss would be readily ascertainable by GE if Towantic were to cancel the Purchase Contract.  Towantic is also informed and believes that GE has in fact ascertained with reasonable certainty the actual loss, if any, that has resulted from Towantic's decision to cancel the Purchase Contract.

11. Despite Towantic's demand, GE has failed and refused to return all but $862,049 of the $24,705,936.00 in payments that Towantic made to GE under the Payment Schedule,

1  claiming that it is entitled to retain all but $862,049 as a "termination fee" under the Purchase
2  Contract.

3      12.    The so-called "termination fee" was not reasonable as of the time the parties
4  entered the Purchase Contract in light of the anticipated harm that would be caused by
5  Towantic's cancellation of the Purchase Contract.  More specifically, Towantic is informed and
6  believes that the payments under the Payment and Termination Schedule do not accurately
7  reflect or approximate the losses GE could have anticipated it would suffer in the event of
8  Towantic's cancellation of the Purchase Contract.

9      13.    The "termination fee" is so unreasonable in light of the anticipated or actual harm
10  caused by Towantic's termination as to operate as a penalty and be against public policy.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief—Unenforceable Penalty)

13      14.    Towantic realleges and incorporates by reference each and every allegation of
14  each preceding paragraph as though fully set forth herein.

15      15.    This claim is for relief pursuant to 28 U.S.C. section 2201, for the purpose of
16  determining an actual controversy between the parties, as hereinafter more fully described.

17      16.    An actual, present and material controversy exists between Towantic and GE with
18  regard to the terms of the Purchase Contract, and more particularly whether GE is legally entitled
19  to retain as a windfall any of the $24,705,936 in payments made under the Purchase Contract,
20  where (1) none of the Turbine Generators has been delivered to Towantic, (2) both at the time
21  the parties entered into the Purchase Contract and at the time Towantic terminated that
22  agreement, GE could have ascertained with reasonable certainty the loss it would suffer at
23  specific times in the process of manufacturing and delivering the Turbine Generators, (3) at the
24  time the parties entered the Purchase Contract, the terms of the Payment and Termination
25  Schedule thereto bore no reasonable relationship to the probable loss faced by GE at each stage
26  of the manufacturing and delivery process described therein, (4) GE has not in fact expended any
27  meaningful resources in manufacturing any of the Turbine Generators that it would have
28  delivered as of the time of Towantic's cancellation, such that it has in fact suffered no significant

1  loss in connection with Towantic's termination of the Purchase Contract, and (5) GE's retention
2  of the payments made by Towantic would constitute a term fixing unreasonably large liquidated
3  damages and would therefore be against public policy.  In this regard, GE claims that it is
4  entitled to retain all but $862,049 of the $24,705,936 in payments made by Towantic as a
5  "termination fee," while Towantic claims that GE is not entitled to retain the $24,705,936 in
6  payments and that GE's retention of such payments amounts to an illegal penalty that is
7  unenforceable under controlling law.

8      17.   A judicial declaration is necessary and appropriate in order that the parties may
9  ascertain their respective rights and obligations under the Purchase Contract.

10      WHEREFORE, Towantic prays for judgment as set forth below.

11  **SECOND CLAIM FOR RELIEF**
12  **(Restitution—Unenforceable Penalty)**

13      18.   Towantic realleges and incorporates by reference each and every allegation of
14  each preceding paragraph as though fully set forth herein.

15      19.   GE's retention of the $24,705,936.00 in payments by Towantic constitutes an
16  attempt to enforce an illegal penalty against Towantic, which would operate as an unfair and
17  unearned windfall to GE.  GE currently maintains in its possession and has benefited from
18  $24,705,936 in funds, which legally and equitably belong to Towantic.

19  **THIRD CLAIM FOR RELIEF**
20  **(Unfair Trade Practice)**

21      20.   Towantic realleges and incorporates by reference each and every allegation of
22  each preceding paragraph as though fully set forth herein.

23      21.   This claim is for relief pursuant to the Connecticut Unfair Trade Practices Act
24  (CONN. GEN. STAT. §§ 42-110a – 42-110q (2003)) and other similar state statutes prohibiting
25  unfair and deceptive trade acts and practices.

26      22.   The Purchase Contract was the end result of a lengthy and costly development
27  and marketing process initiated by GE and Janis Lipman, a resident of Connecticut, in her
28  capacity as President of each of Arena Capital Ltd. (a Connecticut corporation with its principal

1 place of business in Westport, Connecticut) and Towantic Holdings, LLC (a Delaware limited
2 liability company with its principal place of business in Westport) under a joint development
3 agreement.  Towantic is informed and believes that GE spent in excess of $1 million on
4 marketing and development activities for the Energy Center Project, including preliminary site-
5 specific project engineering in support of environmental and site permit applications made to the
6 Town of Oxford and various Connecticut state entities.   As part of these efforts, GE engaged
7 entities located in Connecticut to assess Connecticut infrastructure when developing the Energy
8 Center Project, including Connecticut Light & Power, Heritage Water, and the firm Leggette,
9 Brashears & Graham, Inc..

10        23.     By means of a series of interrelated agreements dated September 30, 1999, a
11 change of the controlling interest in Towantic Energy LLC ("Towantic") (plaintiff in this
12 proceeding) and its corresponding interest in the Energy Center Project occurred.  The parties to
13 the September 30, 1999 agreements included GE, Arena Capital Ltd., and Towantic Holdings
14 LLC.   As a condition to this change in control, under sections 6.3.1 and 3.4.10 of one of these
15 agreements, the Purchase and Sale Agreement, Towantic was required to have entered a short-
16 form agreement with GE providing for the subsequent good-faith negotiation and execution of a
17 definitive purchase agreement for the purchase of equipment for the Project, including two gas
18 turbine generators and one steam turbine generator.  Copies of the September 30, 1999 Purchase
19 and Sale Agreement and Release Agreeement are attached hereto as Exhibit G.  As a result,
20 Towantic and GE executed a preliminary Turbine Purchase Agreement, dated October 7, 1999,
21 in which they agreed to enter a final and definitive agreement.  A copy of the October 7, 1999
22 Turbine Purchase Agreement is attached hereto as Exhibit H.  On or about November 13, 2000,
23 the parties did enter a definitive agreement, which is the Purchase Contract whose termination
24 fee provisions are at issue here.

25        24.     Following the execution of the October 7, 1999 Turbine Purchase Agreement,
26 representatives from Towantic made oral and written presentations in support of permits sought
27 from state and local agencies within Connecticut, including the Town of Oxford, the Connecticut
28 Department of Environmental Protection, the Connecticut Siting Council, and the Independent

1  System Operator.  During the same period, representatives from GE made oral and written
2  presentations seeking a Permit to Construct Air Emission Source from the Connecticut
3  Department of Environmental Protection.  As part of its efforts to obtain permits, Towantic
4  retained and paid fees to counsel located in West Hartford, Connecticut.

5       25.     GE included similarly-structured "termination fees" in agreements to purchase
6  turbines that it entered with customers other than Towantic in at least 2000 and 2001, *i.e.,* around
7  the same time as the Purchase Contract.   Towantic is informed and believes, and thereon alleges,
8  that these fees, if enforced by GE, would also constitute illegal penalties.  According to GE's
9  2003 Annual Report, GE collected nearly a billion dollars ($0.9 billion) in customer contract
10 termination fees in 2002, and $0.6 billion in such fees in 2003.

11      26.     GE's retention of the $24,705,936.00 in payments by Towantic represents an
12 attempt to enforce an illegal penalty against Towantic.  This attempted enforcement against
13 Towantic, both singly and in combination with GE's enforcement of similarly illegal termination
14 fee provisions against other power producers contracting to purchase turbines offends established
15 public policy, is oppressive, causes substantial injury to businesspeople and to commerce within
16 the state of Connecticut, and therefore constitutes an unfair trade practice.   Because GE has, and
17 at all relevant times had market power in the market for heavy-duty gas and steam turbines, GE's
18 practice of imposing and enforcing illegal termination fee provisions has a chilling effect on the
19 construction of additional power generating capacity in the State which stifles the development
20 of a competitive wholesale electricity market, thereby harming captive Connecticut electricity
21 consumers who end up paying higher rates due to an inadequate or overpriced supply of
22 electricity.

23      27.     Towantic has suffered an ascertainable loss by being compelled to pay GE
24 "termination fees" far in excess of any losses GE might have anticipated suffering or actually
25 suffered as a consequence of Towantic's cancellation of the Purchase Contract.

26      WHEREFORE, Towantic prays for judgment as set forth below.

27                                **PRAYER**

28      Plaintiff Towantic prays for relief as follows:

1     (1)    For a declaration that the $24,705,936 in payments made by Towantic to GE to date, which GE has contended constitute a "termination fee," are due and payable back to Towantic;

    (2)    For a judgment of restitution against GE in the appropriate amount according to proof plus interest thereon from the date such amount became due until the date of judgment;

    (3)    For a judgment that GE be ordered to pay Towantic the above-mentioned restitution;

    (4)    For actual damages in an amount to be proven at trial;

    (5)    For punitive damages;

    (6)    For costs of suit;

    (7)    For attorneys' fees; and

    (8)    For such other and further relief as the Court may deem proper.

Dated: August 23, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Mark D. Flanagan
       Mark D. Flanagan

Attorneys for Plaintiff
Towantic Energy, L.L.C.

## DEMAND FOR JURY TRIAL

Plaintiff Towantic demands trial by jury on all claims in the Complaint triable to a jury.

Dated: August 23, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Mark D. Flanagan
      Mark D. Flanagan

Attorneys for Plaintiff
Towantic Energy, L.L.C.